UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| In re: Stephen D. Block,<br>Debtor | :<br>: | |
| Mark G. DiGiacomo, Chapter 7 Trustee<br>of the Estate of Stephen D. Block,<br>Plaintiff, | :<br>:<br>:<br>: | |
| v. | : | C.A. No. 05-318ML |
| Stephen D. Block, Individually and as<br>Trustee of the Fay B. Block Trust,<br>Robert Block, as Trustee of the Fay B.<br>Block Trust, and Merrill Lynch & Co., Inc.,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>: | |

**STATE OF RHODE ISLAND, DIVISION OF TAXATION'S MOTION TO INTERVENE**

Now comes the State of Rhode Island, Division of Taxation (the "State"), the largest creditor of the Debtor, Stephen D. Block, with a claim exceeding $3.9 million dollars, and moves this Honorable Court pursuant to Bankruptcy Rule 2018 (a)(2) and 7024 (b) for an order allowing it to intervene for the purpose of filing a memorandum of law responsive to the motion of Stephen D. Block and Robert Block for withdrawal of the reference under 28 U.S.C. § 157 (d) and Fed. R. Bankr. P. 5011 (the "Motion to Withdraw the Reference"). As grounds for said Motion, the State refers to the Memorandum of Law filed simultaneously herewith.

STATE OF RHODE ISLAND, DIVISION OF TAXATION,

By Its Attorneys,

Bruce W. Gladstone (#2643)
Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 331-5787

Date: August 24 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of August, 2005, a true copy of the within was sent, via first-class mail, postage prepaid, to the following:

Mark G. DiGiacomo, Esq.
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, MA 02110

William J. Delaney, Esq.
Tillinghast Licht LLP
10 Weybosset Street
Providence, RI 02903

H:\ARCHIVE\NBD\DEPCO\BLOCK\PLDGS-USDC-RI\MOINTERVENE2.DOC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| In re: Stephen D. Block, Debtor | : | |
| Mark G. DiGiacomo, Chapter 7 Trustee of the Estate of Stephen D. Block, Plaintiff, | : | |
| v. | : | C.A. No. 05-318ML |
| Stephen D. Block, Individually and as Trustee of the Fay B. Block Trust, Robert Block, as Trustee of the Fay B. Block Trust, and Merrill Lynch & Co., Inc., Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE STATE OF RHODE ISLAND, DIVISION OF TAXATION'S MOTION TO INTERVENE**

The State of Rhode Island, Division of Taxation (the "State"), as successor-in-interest to the claims of Rhode Island Depositors Economic Protection Corporation ("DEPCO"), respectfully submits this Memorandum of Law in support of its Motion to Intervene for the limited purpose of filing a memorandum of law in opposition to the motion of Stephen D. Block and Robert Block for withdrawal of the reference under 28 U.S.C. § 157 (d) and Fed. R. Bankr. P. 5011 (the "Motion to Withdraw the Reference").

**Preliminary Statement**

The State -- by far the largest creditor in the instant Bankruptcy proceeding, having filed a Proof of Claim exceeding $3.9 million dollars -- respectfully requests that this Court allow it to intervene because, due to its substantial economic interest in this proceeding, fairness dictates that it be allowed a limited voice in it. Further, the State and its predecessors have been engaged in litigation with Debtor for more than a decade and is intimately familiar with the factual background pertaining to the equitable defenses now being asserted by the Debtor. Accordingly,

the State respectfully requests that this Honorable Court exercise its discretion to allow the State permission to intervene in this proceeding.

## **Argument**

### I. **The State Satisfies the Standard Applicable to Permissive Intervention.**

Federal Bankruptcy Rule 7024 (b), which is adapted from Federal Rule of Civil Procedure 24, reads in relevant part:

> (b) PERMISSIVE INTERVENTION. Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common.

Permissive intervention is permitted, within the discretion of the Court, when a party has an economic interest in the outcome of the suit. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1911 and cases cited therein. Bankruptcy courts have interpreted this Rule as being "entirely discretionary" with the Court, with the principal consideration being whether intervention will unduly delay or prejudice rights of the original parties. *Id.*

Here, it cannot be disputed that the State has an economic interest in the outcome of this case, as it has filed a $3.9 million dollar proof of claim with the estate based on more than ten loans that Debtor either took or guaranteed from the now defunct credit unions. Also, there can be no claimed prejudice to the Debtor by way of the State's participation, as Debtor's Motion has only just been filed, and the State filed this Motion to Intervene very shortly after learning of Debtor's Motion to Withdraw the Reference.

Further, the State is intimately familiar with central facts bearing on the Court's determination of the instant motion. The State, as successor-in-interest to the claims of DEPCO, has unique knowledge regarding the factual background impacting Debtor's claimed equitable

defenses, including *laches*, upon which the Debtor purports to base his Motion to Withdraw the Reference.

The nature of Debtor's underlying obligation to the State, as described in greater detail below, bears directly on whether Debtor's hands are sufficiently "clean" for him to obtain the equitable relief that he is seeking from this Court. Further, the State respectfully submits that its familiarity with the procedural background in the Bankruptcy Court preceding the filing of Debtor's Motion should shed significant light on the blatant and egregious attempt at forum-shopping that Debtor's Motion represents.

## II. <u>This Court Should Not Countenance Debtor's Blatant Attempts at Forum Shopping.</u>

Not long after filing the instant Adversary Proceeding in the Bankruptcy Court, the Trustee brought a Motion for a Preliminary Injunction seeking to enjoin the Defendants from encumbering or dissipating the assets of the Trust.[1] The Trustee's Motion for Preliminary Injunction was vigorously defended by counsel for the Debtor's Trust, who asserted the defenses, among others, set out by him in his pending Motion.

The Debtor, after oral argument, only agreed to enter into a consent Preliminary Injunction after the Court indicated its inclination to grant the Motion. Accordingly, after being sent a clear message by Judge Votolato that upon preliminary review, the Trustee in Bankruptcy had a likelihood of success on the merits of his claims, the Debtor sought a second bite at the apple by having his defenses heard by a different judge. This constitutes blatant forum-shopping that should not be countenanced by this Court.

[1] The assets of the Fay Block Trust apparently consist of two homes and a brokerage account containing approximately one million dollars worth of bonds and/or equities.

## III. Debtor's Unclean Hands Bar Him From the Relief That He Is Seeking.

Prominent in Debtor's Motion is his contention that this Court should apply the equitable defense of *laches* to bar the relief sought by the Trustee. It is axiomatic, however, that he who seeks equity must do equity. *Allen and Reed v. Investments, Inc.*, 57 R.I. 457, 190 A. 447 (R.I. 1937). Put another way, a party, such as Mr. Block, with "unclean hands," simply is not entitled to the sort of equitable relief requested here.

The State, therefore, submits this Memorandum to detail some of the factual background applicable to its claim against the bankruptcy estate.[2] On June 21, 1991, the State's predecessor filed a claim in the amount of $3,949,290.88 against the Bankruptcy estate. (A copy of DEPCO's Proof of Claim, which has been duly assigned to the State, is annexed hereto as Exhibit A). The bases of this claim were a number of loans which Mr. Block took or guaranteed from the now defunct credit unions. In 1996, DEPCO had also initiated an Adversary Proceeding against the Debtor pursuant to 11 U.S.C. § 523, seeking to have this debt declared non-dischargeable due to its claim that Mr. Block had acted as a "straw borrower" for Nicholas Cambio, in an apparent fraud on the various credit unions.

One of the bases of DEPCO's § 523 action was the Report of the RISDIC Commission (the "Commission"), which concluded that the conduct of Debtor was a contributing factor to Rhode Island's unprecedented credit union crisis. The Commission, made up of a distinguished panel of Rhode Island attorneys and citizens, specifically cited to the conduct of Debtor, Mr. Cambio, and others acting with them as contributing factors to the collapse of the credit unions,

---

[2] The State, by way of its own Adversary Proceeding against Debtor, released him individually, but carved out of the Release, by way of the Trustee's claims against the Fay Block Trust, any additional amounts it might receive from the Bankruptcy Estate.

described by the Rhode Island Supreme Court as an "overwhelming economic and human crisis." *See Advisory Opinion to the Governor (DEPCO)*, 593 A.2d 943, 946 (R.I. 1991).

The Commission's Report described in detail a series of substantial loans, totaling millions of dollars, that Mr. Block took or guaranteed in conjunction with Nicholas Cambio and others, despite having no apparent ability to repay them. After discussing these loans in detail, the Commission made the following recommendations:

> The Select Commission urges that these transactions be carefully considered for possible presentation to a State Grand Jury. The Cambio group's use of loan proceeds to fund commodities and stock option transactions with diverted loan proceeds may constitute violations of state law by obtaining funds under false pretenses. *R.I. Gen. Laws* § 11-41-4. Under certain circumstances, violations of federal law may have occurred including § 1343 where interstate "wires" were used in furtherance of the fraud and § 2314, the in state transportation of monies stolen and taken by fraud.
>
> The Cambio group's use of straw borrowers ***such as Stephen Block*** on the Bear Hill Road project and other fraudulent activities such as using land they did not own as collateral may violate a number of Rhode Island criminal statutes, including *R.I. Gen. Laws* §§ 11-18-6 to 11-18-8 (false statements to obtain loans), § 11-18-1 (aiding and abetting the submission of false documents by bank officials with intent to deceive), and § 11-41-4 (obtaining property under false pretenses). Such conduct occurring during 1990 may also violate *R.I. General Laws* §§ 19-19-1 (aiding and abetting the submission of false documents by bank officials with intent to deceive) and § 19-9-5 (false statement to obtain a loan).
>
> * * *
>
> The Select Commission recommends further investigation into the financial affairs of Nicholas Cambio ***and Stephen Block*** in connection with their transfers by check of large sums of money to Eugene and Steven Carlino and Douglas Lumber Co. For example, during 1989 and 1990, Block wrote 22 checks to Eugene Carlino totaling $155,000, while another $13,950 in checks from Block went to Carlino's son Steven. During this same period, Block wrote $430,000 in checks to Douglas Lumber Company, which is owned in part by the Carlinos (Exs. 56-58, 4/2/92). The Cambios also wrote large checks to these individuals during the same period. For example, on May 13, 1989, Block wrote seven separate checks to Eugene Carlino, each for $2,000.

> Additional transactions involving the Carlinos also should be closely investigated. For example, on November 7, Steven Carlino was released as a guarantor by RICCU on 11 loans totaling nearly $1.5 million. The Carlinos also are involved in land transactions involving Stephen Block, the Cambios, Sgambato, Mancini and Cerroni, which merit close attention.
>
> The Select Commission further recommends that DEPCO or the Receiver pursue civil actions against the Cambios and their entities under such theories as note default, breach of contract, constructive trust, fraud, deceit, unjust enrichment, and fraudulent conveyance.

(*Emphasis added*).

Not only did the RISDIC Commission recommend that the conduct of Mr. Block be examined for possible criminal prosecution, but his conduct in the pending Bankruptcy also has been less than exemplary. Nowhere does Mr. Block make mention in his papers of the fact that he has already consented to the revocation of his Discharge in the State's Adversary Proceeding based on the above-described conduct and in a separate § 727 action brought by the Trustee based on alleged failures to disclose assets in the Bankruptcy proceeding.

Accordingly, Debtor's attempts to invoke this Court's equitable powers by way of the equitable defense of *laches* should be rejected, as he does not come to this Court with clean hands.

## IV. **<u>The Debtor's Laches Defense Fails as He Has Not Suffered Any Prejudice as a Result of The Alleged Delay in Bringing the Turnover Action, Which Delays, in All Events, Were Not the Result of Neglect Or Delay.</u>**

As Debtor candidly admits, in order to prevail on his defense of *laches*, he must demonstrate not only delay, but *prejudice* resulting to him by such delay. Here, he simply cannot make any such showing of prejudice. By his own testimony, for the nine year period at issue, Mr. Block has used this "Trust" as his own personal piggy bank, using its assets to pay his rent, lawyers and living expenses, making withdrawals at his sole whim. Not only has he not

been prejudiced by the delay, but to the contrary, Mr. Block has only benefited from this delay, and the defense of *laches* should therefore be unavailable to him.[3]

## V. <u>Mr. Block's Future or Contingent Interest In the Trust Constitutes an Asset of the Estate.</u>

Debtor candidly concedes that there was no valid spendthrift provision in effect at the time that he filed for bankruptcy protection, but instead offers the novel proposition that because the Trust was revocable, the Debtor's interest in it did not become property of the estate. This, however, is a distinction that is unrecognized by the Bankruptcy Code, state law, commentators or any case law. The law on this subject is uncontroverted that only future interests protected by *valid spendthrift provisions at the time of the filing of the Bankruptcy Petition* are excluded from the estate. As stated by one leading commentator:

> Where there is no valid spendthrift trust provision excluding the debtor's interest in the property held in trust pursuant to Code section 541(c)(2), every right of the debtor under the trust becomes property of the estate. Thus, for example, when there was no spendthrift protection and the debtor, as trust beneficiary, held a transferable interest in the trust at the time of filing for bankruptcy, the debtor's interest in the trust became part of the bankruptcy estate, and all future distributions went to the trustee and the creditors. Consider another example. When the debtor has numerous rights to break into the trust and get the money out, despite a valid spendthrift protective clause or statute, then the debtor's interest in the trust becomes property of the estate.

5 *Collier on Bankruptcy*, § 541.11[6][a].

---

[3] Further, any delays in this proceeding were not caused by either of the Trustees' lack of diligence or neglect, but rather by (i) the shared belief of the Trustee and creditors that the separate Adversary Proceeding against Mr. Cambio might potentially make the bankruptcy estate's creditors whole; and (ii) the fact that the true nature of the trust assets only recently came to light through discovery.

Judge Lagueux, in *Anderson v. McGowan*, 128 B.R. 850 (D.R.I. 1991), has summarized the extremely broad reach of Bankruptcy Code § 541:

> The filing of a bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case" wherever located and by whomever held. 11 U.S.C. § 541(a)(1). The scope of property rights and interests encompassed by this estate is very broad. "It includes all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property currently specified in section 70(a) of the Bankruptcy Act . . . ." *Notes of Committee on the Judiciary*, S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News, 5787, 5868. "[E]very conceivable interest of the debtor in the estate; all forms of property whether tangible or intangible, personal or real, causes of action, leasehold interests, or possessory interests are encompassed." 2 W. Norton Jr., *Norton Bankruptcy Law and Practice* § 29.04 at 10 (1981) [hereinafter *Norton*]. The Supreme Court has held that Section 541 allows the bankruptcy estate to include a right to a refund, *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966), as well as a nonpossessory interest in personal property seized by the Internal Revenue Service, *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205-06, 103 S.Ct. 2309, 2313-14, 76 L.Ed.2d 515 (1983). *Other courts have held that Section 541 reaches all sorts of future, nonpossessory, contingent, speculative, and derivative interests. See generally Norton, supra* § 29.04-07; 4 L. King, R. D'Agostino, M. Cook, *Collier on Bankruptcy*, § 541.06-10 (15th ed. 1991).

In keeping with the broad scope of Section 541, contingent interests in trusts have been analyzed by Courts not from the perspective of whether those trusts are revocable, but from the perspective of whether those trusts were valid spendthrift trusts at the time of the filing of the petition. *See, e.g., Newton v. Danning*, 922 F.2d 1379 (9th Cir. 1990) (contingent status of debtor's interest in trust did not prevent it from becoming property of the estate); *In re: Dias*, 37 B.R. 584, 586-87 (Bkrtcy D. Idaho 1984) (beneficial interest in a trust is property of the estate even though it is contingent). *Cf. Restatement (2d) of Trusts*, § 162 ("[t]he mere fact that the interest of the beneficiary is contingent and not vested does not preclude creditors of the beneficary from reaching it.").

Finally, Congress's intent to exclude from the estate only certain narrow categories of assets is entirely apparent from the text of § 541 itself. The only mention of the word "trust" contained within § 541 is the subsection that exempts interests in valid *spendthrift* trusts from being property of the estate. *See* 11 U.S.C. § 541 (c)(2). Indeed, the statute itself makes explicit that such a contingent interest becomes property of the estate "notwithstanding any provision in an agreement, transfer instrument, or applicable non bankruptcy law . . . that restricts or conditions transfer of such interest by the debtor . . . ." 11 U.S.C. § 541 (c)(1)(A). In other words, by the unambiguous wording of the statute, the only contingent beneficial interest in trusts that Congress intended to exempt from the bankruptcy estate was that of a valid spendthrift provision, as determined by State law. As Debtor acknowledges that there was no spendthrift provision in effect at the time of filing, this specific and limited exception does not apply, and Debtor's contingent interest in his mother's trust became property of the estate on the day that he filed his petition.

## Conclusion

For the reasons set out above, the State of Rhode Island, Division of Taxation, respectfully requests that this Court enter an order denying the Debtor's Motion to Withdraw the Reference.

STATE OF RHODE ISLAND, DIVISION OF TAXATION,

By Its Attorneys,

Bruce W. Gladstone (#2643)
Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 331-5787

Date: August 24, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of August, 2005, a true copy of the within was sent, via first-class mail, postage prepaid, to the following:

Mark G. DiGiacomo, Esq.
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, MA 02110

William J. Delaney, Esq.
Tillinghast Licht LLP
10 Weybosset Street
Providence, RI 02903

H:\ARCHIVE\NBD\DEPCO\BLOCK\PLDGS-USDC-RI\MEMOINTERVENE2.DOC